IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CLINTON MORRIS REDDICK,

                    Petitioner,

       vs.

MICHAEL S. EVANS,[1] Warden, Folsom
State Prison,

                Respondent.

No. 2:07-cv-01147-JKS

MEMORANDUM DECISION

Petitioner Clinton Morris Reddick, a state prisoner proceeding *pro se*, has filed a Petition for Habeas Corpus relief under 28 U.S.C. § 2254. Reddick is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Folsom State Prison. Respondent has answered, and Reddick has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

Following a jury trial, Reddick was convicted in the California Superior Court, Sacramento County, of five counts of second-degree robbery (Cal. Penal Code § 211), with use of a personal firearm (Cal. Penal Code § 12022.53(b)). The Sacramento County Superior Court sentenced Reddick to an aggregate term of 32 years and 4 months. Reddick timely appealed his conviction to the California Court of Appeal, Third District, which affirmed his conviction in an

---

[1] Michael S. Evans, Warden, Folsom State Prison, is substituted for Tom Felker, Warden (A), High Desert State Prison. Fed. R. Civ. P. 25(d).

unpublished, reasoned decision.[2]  The California Supreme Court summarily denied review

without opinion or citation to authority on August 10, 2005.[3]  On February 28, 2006, Reddick

filed a petition for habeas corpus relief in the Sacramento County Superior Court, which denied

his petition in an unpublished, reasoned decision.[4]  On August 6, 2006, Reddick filed a

successive petition for habeas corpus relief in the Sacramento County Superior Court asserting

grounds different than those asserted in his first petition.  On October 16, 2006, the Sacramento

County Superior Court denied his petition as an impermissible successive petition, citing *In re

Clark* (1993) 5 Cal. 4th 750, 769.[5]  Reddick then filed a petition for habeas corpus relief in the

California Court of Appeal, Third District, on December 19, 2006, asserting the same grounds as

he asserted in his second petition to the Sacramento County Superior Court.  The Court of

Appeal summarily denied his petition without opinion or citation to authority on January 4,

2007.[6]  Reddick filed a petition for habeas corpus relief in the California Supreme Court on

January 29, 2007, asserting the same grounds asserted before the superior court and the court of

appeal.  The California Supreme Court summarily denied his petition citing *In re Dixon* (1953)

41 Cal. 2d 756; *In re Swain* (1949) 34 Cal. 2d 300, 304; *People v. Duvall* (1995) 9 Cal. 4th 464,

474, on March 14, 2007.[7]  Reddick filed his Petition for relief in this Court on June 10, 2007.

---

[2] *People v. Reddick*, 2005 WL 1199206 (May 20, 2005).

[3] Lodged Document No. 3.

[4] Lodged Document No. 7.  Reddick did not seek further review of the grounds raised in this petition in the California appellate courts.

[5] Lodged Document No. 4.

[6] Lodged Document No. 5.

[7] Lodged Document No. 6.

## II. GROUNDS RAISED/DEFENSES

In his Petition Reddick raises six grounds:  (1) he was illegally tried *in absentia*; (2) he was denied the right to represent himself; (3) he was improperly sentenced (multiple sentences for a single act); (4) he received ineffective assistance of trial counsel; (5) he received ineffective assistance of appellate counsel; and (6) the trial court erred in instructing jury on constructive possession by an employee.  Respondent contends that: (1) the Petition is time barred;[8] (2) grounds one through five are procedurally barred; and (3) the fourth and fifth grounds are unexhausted.  Respondent raises no other affirmative defenses.[9]

## III. STANDARD OF REVIEW

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[10]  The Supreme Court has explained that "clearly

---

[8] This Court denied Respondent's motion to dismiss for untimeliness on the merits. Docket No. 26.  Because Respondent has not cited an intervening change of controlling authority, introduced new evidence, or has shown that the previous disposition was clearly erroneous and would work a manifest injustice, the Court declines to revisit this issue.  *See Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995); *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

[9] *See* Rules—Section 2254 Cases, Rule 5(b).

[10] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[11]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[12]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[13]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[14]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[15]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[16]

---

[11] *Williams*, 529 U.S. at 412.

[12] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[13] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[14] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[15] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[16] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

In applying this standard, this Court reviews the last reasoned decision by the state-court.[17]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[18]  When there is no reasoned state-court decision denying an issue presented to the state-court and raised in a federal habeas petition, this Court must assume that the state-court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state-court decision was objectively unreasonable.[19]  The scope of this review is for clear error of the state-court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams*. . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[20]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[21]

---

[17] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[18] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[19] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[20] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[21] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

IV.  DISCUSSION

**A.  Procedural Bar**.

Respondent contends that because the California Supreme Court denied Reddick's petition for habeas relief citing *Dixon*,[22] *Swain*[23] and *Duvall*,[24] Reddick procedurally defaulted on his first five grounds and is, therefore, barred from raising them in this proceeding.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[25]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules in raising the claims . . . ."[26]  "[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default."[27]  A discretionary state procedural rule can be firmly established and regularly followed, so as to bar federal habeas review, even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others.[28]

———————————

[22] *Ex parte Dixon*, 264 P.2d 513 (Cal. 1953).

[23] *Ex parte Swain*, 209 P.2d 793 (Cal. 1949).

[24] *People v. Duvall*, 886 P.2d 1252 (Cal. 1995).

[25] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).

[26] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[27] *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotations marks and citation omitted).

[28] *Beard v. Kindler*, 558 U.S. ___, 130 S. Ct. 612, 618 (2009).

Although the ultimate burden of proving adequacy of a state procedural bar is on the Respondent, once the Respondent has "adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner."  Reddick may satisfy his burden "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule."[29]  In his Traverse, Reddick has not addressed procedural bar.  Consequently, Reddick has not met the minimal burden imposed upon him to place procedural bar at issue.  Therefore, his first five grounds are procedurally barred.  Moreover, as discussed further below in subpart C, even if this Court were to reach the merits on Reddick's first five grounds he would not prevail.

**B.  Exhaustion**.

Respondent contends that Reddick failed to exhaust his state court remedies with respect to his fourth and fifth grounds.  Respondent does not, however, address the exhaustion of remedies defense in his Memorandum of Points and Authorities accompanying the response.  Furthermore, the Petition may be denied on the merits notwithstanding the failure to exhaust state court remedies.[30]  Therefore, this Court declines to reach the exhaustion issue.

**C.  Merits**.

Ground 1:  Trial *in absentia*.

Reddick argues that he was illegally tried *in absentia*.  Although he conceded that a criminal defendant may be tried *in absentia*, Reddick argues that at the time he absented himself,

---

[29] *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).

[30] 28 U.S.C. § 2254(b)(2).

jeopardy had not attached and, therefore, trial had not commenced.[31]   The record reflects that on

the last day that Reddick was present in court, Wednesday August 13, 2003, the court completed

jury selection and adjourned for the day to resume on the following Monday.[32]   The record also

reflects that the jury was sworn to try the case on Wednesday August 13.[33]   When trial resumed

on Monday August 18, 2003, Reddick was not present.[34]   Thereafter, Reddick continued to

absent himself.   Reddick does not contend that his absence was not voluntary.   The trial court, in

ruling that the trial would continue in the absence of Reddick stated:

> I recognize I have discretion in this matter and I carefully thought about
> the exercise of this discretion, and I believe that the cause of this delay, if there is
> to be a delay, is solely on Mr. Reddick's hand and head. I believe that whatever
> mistakes have led to his being released from jail pending the ability of him being
> brought here, I believe that he is the cause of his nonappearance, and that it's a
> conscious nonappearance.   Since he was already facing 17 years in Judge Fall's
> court, and the potential of more sentence that existed in this case, I don't expect
> him to voluntarily reappear.
>
> My feeling is this is a person who has absconded and he is running and he
> is running hard and he's running fast, and when I juxtapose and balance out the
> difficulties of this type of a case on the People and the witnesses and the fact that
> he has caused the inconvenience of calling these witnesses all back after a year of
> delay until this case gets to trial for a year's time because that was the nature of
> the case, it is my judgment and opinion and my ruling that we will try Mr.
> Reddick in absentia.[35]

---

[31] *See Crosby v. United States*, 506 U.S. 255, 261-62 (1993) (holding that, under Federal
Rule of Criminal Procedure 43, a criminal defendant could not be tried *in absentia* if the absence
occurred prior to the commencement of the trial, but declined to address the issue under the Sixth
Amendment).

[32] Lodged Document No. 13, Transcript pp. 71-92.

[33] Lodged Document No. 11, Clerk's Transcript p. 174.

[34] Lodged Document No. 13, Transcript p. 103.

[35] Lodged Document No, 13, Transcript pp. 100-01.

The law is clear that a criminal defendant in a non-capital case can waive his right to be present at trial by his voluntary absence.  It is unnecessary that the defendant knew or had been expressly warned that trial would continue in his absence.[36]  The law is also clear that jeopardy attaches in a jury trial when the jury is sworn.[37]  Accordingly, contrary to Reddick's factual assertions, the trial had commenced before he absented himself.  Thus, under the facts of this case, conducting the trial in Reddick's absence did not violate any constitutionally protected right.  Reddick is not entitled to relief under his first ground.

Ground 2:  Right to Self-Representation.

Reddick contends that he was denied his Sixth Amendment right to represent himself at trial.  On August 6, 2003, the day before the case was originally set to be called for trial, Reddick made both a *Marsden* motion[38] to relieve counsel and a *Faretta* motion[39] that he be allowed to represent himself.  Both motions were denied and the trial was continued for a week due to the illness of counsel for Reddick's co-defendant.  On August 12, the day to which trial was continued, the trial court held a second *Marsden* hearing, finding that Reddick's appointed counsel was effectively representing him.  The next morning, the trial court conducted a hearing

---

[36] *Taylor v. United States*, 414 U.S. 17, 20 (1973) (per curiam); *Diaz v. United States*, 223 U.S. 442, 445 (1912); *see* Fed. R. Crim. P. 43.

[37] *Crist v. Bretz*, 437 U.S. 28, 35-38 (1978).

[38] The term "*Marsden* motion" comes from *People v. Marsden,* 465 P.2d 44, 47-48 (Cal. 1970), a California Supreme Court case holding that, as part of a criminal defendant's right to effective assistance of counsel under the Sixth Amendment, a trial judge must permit a defendant requesting substitute counsel the opportunity to present his reasons for the request, *i.e.,* evidence and argument to establish that he is receiving ineffective assistance of counsel.

[39] The term "*Faretta* motion" comes from *Faretta v. California*, 422 U.S. 806, 819-820 (1975), holding that the Sixth Amendment grants a criminal defendant the right of self-representation and to make one's own defense personally.

on Reddick's renewed *Faretta* motion. After providing Reddick with the required *Faretta*

warnings, the trial court made extensive inquiries into Reddick's ability to represent himself.  In

response to questions by the court, Reddick revealed that he had no law school education, had

dropped out of school in the twelfth grade, and had no high school diploma or GED certificate.[40]

Other than to having "been to the law library," Reddick had no "legal background, training or

knowledge" other than what he had received prior to dropping out of high school.[41]  Based upon

this colloquy, the trial court denied Reddick's *Faretta* motion, holding:

> THE COURT:  My concern in this case is certainly contained in the
> People versus Burton case at 48 Cal. 3d 843 at page 853, and also I recognize that
> I need to apply the People versus Windham factors at 19 Cal. 3d at 121, 128,
> wherein the request to represent … themselves at mid-trial is not a constitutional
> right but solely at the discretion of the trial court following and subject to the
> following criteria:
>     First, I consider the quality of representation of counsel.
>     I consider Mr Higgins to be one of the finest counsel that we have in our
> courts practicing criminal law.  He has all the tools and has demonstrated them
> repeatedly before me in regards to his defense of criminal cases in trial, in motions
> and in proceedings and procedures.  He has always shown exemplary knowledge,
> skill, and training.  I balance that out with your dropping out of school some time
> in the twelfth grade, not going forward to get a GED, and the very technical nature
> of this case.  I also consider your prior proclivity to substitute counsel. Quite
> frankly, the record should reflect that your motions have been made repeatedly.
> They were made just last week.  It's only out of an abundance of caution that I'm
> going forward and hearing your motions in this regard, both the Marsden as well
> as this Faretta.  I believe there should have been and there was adequate record in
> the prior motions, but just in case there was something new, something that shows
> a change of circumstances, something that a Court ought to consider at this late
> last moment for trial, I wanted to give you the opportunity to present it if it was
> there.  I don't see that.
>     Your reasons, what are your reasons?
>     DEFENDANT REDDICK:  For what?
>     THE COURT:  For wanting to represent yourself at this time?

---

[40] Lodged Document No. 13, Transcript p. 46.

[41] Lodged Document No. 13, Transcript p. 47.

DEFENDANT REDDICK:  Because I would rather represent myself than him.  I feel I will do more to help myself than he would help me, than he would do.

THE COURT:  I'm going to make a finding of fact that I do not believe that to be the case. Given the counsel's skill, his knowledge of the case and knowledge of legal procedures and his abilities that he has demonstrated time and time again in our courts and in my court, I do not believe that you would do a better job for yourself.  I believe you would be doing yourself a great disservice.

I also consider the penalties that you are facing in this trial are substantial.  You put yourself at great risk.  The penalties that you would be facing along with what you've already been convicted and not yet sentenced of would mean that there is a young man that goes into prison and potentially a very old man coming out.

I also consider the length and the stage of the proceedings that we are in.  This motion was made at the last moment, literally on the doorstep of trial just before the pretrial motions were to be heard and before the jury marches through the door.  There is nothing new in this motion that has not been brought up before, not been ruled upon properly and procedurally at an even earlier stage of the proceedings.

I also considered the disruption and delay which might reasonably be expected to follow the granting of such a motion.

The attorneys indicated there will be potentially thirty-five witnesses called in the case and a substantial number of them will be called by the prosecution.  Given this is the season of vacations, delays and rescheduling, it would be a great difficulty and you would put an unnecessary burden on the People.  A burden, if it was justified, I would have no compunction against applying but one that I cannot see applying given the lack of showing that you've made in any way as being needed.

[Conference with counsel omitted]

I also cite for these very same reasons in addition to People versus Windham at 19 Cal. 3d 121, 128, People versus Hamilton at 41 Cal. 3d 408, 420.  My feeling and my finding based on all the evidence that is before me, based on the timing of your request, the very shallow reasons for your request and the fact your request was made before and also denied is that your request has been made for the purpose of delay in this trial and the havoc that it would create in this trial both to those witnesses that would testify against you as well as to the prosecution of this case.  I make that finding that your waiting until this late moment certainly shows that it was for the purpose of delay.  I also underscore this because of the very shallow reasons that you've given, reasons without substance and reasons that do not bear fact --

DEFENDANT REDDICK:  Can I say something?  Now, I've been trying to fire my lawyer numerous times.

THE COURT:  And its of record those times your request was denied for good cause and on good grounds.

DEFENDANT REDDICK:  It doesn't have anything to do with me trying to delay the trial.  I feel he is not ready.

THE COURT:  And its my understanding even the Faretta motion, the motion to represent yourself, was made at the last hearing.

DEFENDANT REDDICK:  Because I can't get rid of him.

THE COURT:  Is that correct?

MR. HIGGINS:  Yes.  Co-counsel was sick all last week so the case could not procedure [*sic*].

MR. LEONARD:  That's correct.

THE COURT:  I understand there is discretion that has been placed on my shoulders by the appellate courts. I wear this discretion to the degree that I take it very seriously.  I recognize the constitutional grounds that are involved and the rights that you have to represent yourself, but I do not believe in any manner, shape or form that you have met the requirements of the law to allow yourself to be represented by yourself.  You have not made the proper showing and it's too late given the requested time, and I believe it's for the purpose of delay and the havoc that you would seek to wreak on this trial.  I also believe your counsel is superbly qualified and prepared to represent you.[42]

The Ninth Circuit has held that "[i]f a defendant's request to proceed pro se is timely, not for purposes of delay, unequivocal, voluntary, intelligent and the defendant is competent, it must be granted."[43]  The decision of the trial court brings three of the factors into play in this case: timeliness, delay and competence.

"Because the Supreme Court has not clearly established when a *Faretta* request is untimely, other courts are free to do so as long as their standards comport with the Supreme Court's holding that a request 'weeks before trial' is timely."[44]  The timing of Reddick's request to represent himself, even the first request made, fell well inside the "weeks before trial" standard.  Thus, the assumed decision of the California Supreme Court upholding the trial court's

---

[42] Lodged Document No. 13, Transcript pp. 47-51.

[43] *United States v. Maness*, 566 F.3d 894, 896 (9th Cir. 2009).

[44] *Marshall v. Taylor,* 395 F.3d 1058, 1061 (9th Cir.2005) (citation omitted).

denial of Reddick's request to represent himself was not contrary to, or an unreasonable

application of, Supreme Court precedent.

On the questions of delay and competence, at the time Reddick made his initial *Faretta*

motion, the following colloquy occurred:

> THE COURT:  And despite that, you're prepared -- you think you want to
> go to trial on this matter yourself?
> DEFENDANT REDDICK:  Well I feel like I'm not ready, but like I'd do
> more than what he doing, yeah.[45]

In response the trial court's statement a continuance would not be granted, Reddick stated:

> DEFENDANT REDDICK:  Seems continuance is not really the problem.
> Problem is that he just -- I'd rather have another lawyer.  I tell him I'm not ready
> to go to trial.  As far as me not even discussing a defense, but he want to go to
> trial you know, I feel like I do a better job.  He claims he read it, I not read it.  He
> claims he's ready, I'm not ready.

Later, following the *Marsden* hearing, the following colloquy took place.

> THE COURT:  Mr. Reddick, I'm not sure that you are competent  to
> represent yourself.
> DEFENDANT REDDICK:  Not -- I'm not competent, but he's not gonna
> represent me.
> THE COURT:  I'm not sure that you are competent.
> DEFENDANT REDDICK:  I'm not.
> THE COURT:  I am not impressed with the way you've been able to
> articulate your reasons here for having Mr. Higgins removed.  Although we're not
> revisit and get into to it, I am not sure you are competent to represent yourself.
> And I think you just made a statement to indicate you were not competent.
> DEFENDANT REDDICK:  Yes, I know I am not, but I know I don't want
> him representing  me.
> THE COURT:  That maybe.
> DEFENDANT REDDICK:  I'll represent myself.
> THE COURT:  No, no, no, no, no, no.  That's not the way it works.  I have
> to find that you're competent to represent yourself.  I don't think that you are.
> DEFENDANT REDDICK:  Eventually, if I can go to the law library, find
> all the stuff I need, find out about my case, how to deal with this stuff, you know,

---

[45] Lodged Document No. 13, Transcript p. 3.

I could be, but I know I don't want this guy as my lawyer.  I would rather go Faretta.[46]

A request to represent oneself "need not be granted if it is intended merely as a tactic for delay"[47]  The trial court may consider events preceding a motion for self-representation to determine whether the request is made in good faith or merely for delay.[48]  In the absence of clear and convincing evidence to the contrary, which is not present in this case, this Court is bound by the finding of the Sacramento County Superior Court that the motion was made for the purpose of delay.[49]

In light of this holding, this Court need not reach the question of Reddick's competence to represent himself.  Reddick is not entitled to relief under his second ground.

Ground 3:  Improper Sentence.

Reddick argues that the trial court improperly sentenced him on five counts, all of which arose out of a single act.  In denying his second habeas petition, the Sacramento County Superior Court addressed the merits of this claim and rejected Reddick's arguments, holding:

> "Section 654 precludes multiple punishment for a single act or indivisible course of conduct punishable under more than one criminal statute.  Whether a course of conduct is divisible . . . depends on the 'intent and objective' of the actor.  If all of the offenses are incident to one objective, the court may punish the defendant for any one of the offenses, but not more than one.  If, however, the defendant had multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct."  (*People v.*

---

[46] Lodged Document No. 13, pp. 19-20.

[47] *United States v. Flewitt*, 874 F.2d 669, 674 (9th Cir. 1989).

[48] *Id.* at 675.

[49] 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340.

*Cleveland* (2001) 87 Cal.App.4th 363, 267, cites omitted [separate intents when defendant severely beat and robbed elderly victim].)

"A defendant may not bootstrap himself into section 654 merely by claiming that a series of divisible acts, each of which has been committed with a separate identifiable intent and objective, composes an 'indivisible transaction.' . . . [S]ection 654 does not apply if 'one act has two results each of which is an act of violence against the person of a separate individual.'" (*People v. Massie* (1967) 66 Cal. 2d 899, 908.)

Petitioner was charged in a bank robbery. He was convicted of robbing five different tellers. Each of the tellers separately was threatened with violence. This action does not fall under Penal Code § 654. The Sentencing was correct.

This issue is an issue of state law and is beyond the purview of this Court in a federal habeas proceeding. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[50] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[51] In this case, the Sacramento Superior Court interpreted and applied California state law. Having failed to present a federal constitutional issue, Reddick is not entitled to relief under his third ground.

Ground 4: Ineffective Assistance of Trial Counsel.

Reddick contends that because his trial counsel failed to call his mother as a witness, trial counsel was ineffective. As asserted in his petition, Reddick asked his trial counsel to call his

---

[50] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982) (federal court must accept that state courts correctly applied state laws); *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[51] *Bradshaw v. Richey*, 546 U.S. 74, 76, (2005); *see also West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

mother as a part of his defense, who "was at the scene."  According to Reddick, his mother was a

material witness whose testimony would have changed the outcome of the trial, and that counsel

had talked to his mother and that she had agreed to fly out to testify on his behalf.  Unfortunately,

nowhere in the record before this Court does Reddick describe the testimony his mother could

have provided or the defense to which it was relevant.  Nor does he provide the affidavit or

declaration of his mother as to what her testimony might have been.  Reddick carries the burden

of proving, by a preponderance of the evidence, that he is entitled to habeas relief.[52]  Reddick has

failed to provide a factual basis to support his purely conclusory statements.

     The petition must specify all the grounds for relief available to the petitioner and the facts

supporting each ground.[53]  If it plainly appears on the face of the petition that petitioner is not

entitled to relief, a district court must dismiss the petition.[54]  This requirement survives the initial

screening and an answer has been ordered and filed, and the court may do so *sua sponte*.[55]  As the

Supreme Court has stated:

> Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must
> "specify all the grounds for relief available to the petitioner" and "state the facts
> supporting each ground."  See also Advisory Committee's Note on subd. (c) of
> Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently
> contained mere conclusions of law, unsupported by any facts. [But] it is the
> relationship of the facts to the claim asserted that is important . . . .");  Advisory
> Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 (" '[N]otice'
> pleading is not sufficient, for the petition is expected to state facts that point to a

---

[52] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations unsupported by specific facts are insufficient to warrant habeas relief).

[53] Rules—Section 2254 Cases, Rule 2(c).

[54] Rules—Section 2254 Cases, Rule 4.

[55] *See Day v. McDonough*, 547 U.S. 198, 207-09 (2006).

real possibility of constitutional error." (internal quotation marks omitted)). Accordingly, the model form available to aid prisoners in filing their habeas petitions instructs in boldface:

> **"<u>CAUTION</u>: You must include in this petition <u>all</u> the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date."**
> Petition for Relief From a Conviction or Sentence By a Person in State Custody, Habeas Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V) (emphasis in original).

A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to "show cause why the writ should not be granted." § 2243. Under Habeas Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not entitled to relief in the district court," the court must summarily dismiss the petition without ordering a responsive pleading. If the court orders the State to file an answer, that pleading must "address the allegations in the petition." Rule 5(b).[56]

Reddick bears the burden of proving that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[57]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[58]  Reddick must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[59]  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action

---

[56] *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005).

[57] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[58] *Id*.

[59] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

'might be considered sound trial strategy.'"[60] "[He] bears the heavy burden of proving that

counsel's assistance was neither reasonable nor the result of sound trial strategy."[61] "In

determining whether the defendant received effective assistance of counsel, 'we will neither

second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but

rather, will defer to counsel's sound trial strategy."[62] "Because advocacy is an art and not a

science, and because the adversary system requires deference to counsel's informed decisions,

strategic choices must be respected in these circumstances if they are based on professional

judgment."[63]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[64]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims

under the § 2254(d)(1) standard.[65]

---

[60] *Strickland*, 466 U.S. at 689.

[61] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

[62] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[63] *Strickland*, 466 U.S. at 681.

[64] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct.1411, 1420 (2009).

[65] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

This Court cannot say that the assumed decision of the California Supreme Court that Reddick was not deprived of the effective assistance of counsel was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[66]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Reddick's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Reddick has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that defendant's defense was prejudiced, as required by *Strickland-Hill*.  In particular, Reddick has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Reddick is not entitled to relief under his fourth ground.

Ground 5:  Ineffective Assistance of Appellate Counsel.

In his petition, Reddick argues that his appellate counsel was ineffective for failing to raise issues that Reddick had requested appellate counsel raise.  In his Petition, Reddick does not identify the unraised issues.  In his Traverse, Reddick identifies the issues as his first, second, third and fifth grounds.[67]

---

[66] 28 U.S.C. § 2254(d).

[67] This Court notes that the first three points discussed in Reddick's Traverse are his first three grounds in his Petition.  The fifth point discussed in the Traverse is his fourth ground

(continued...)

The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[68]  Having determined that Reddick's first four grounds are without merit, it cannot be said that Reddick was prejudiced by any alleged omission, as required by *Strickland-Hill*.  Thus, this Court cannot find that Reddick's appellate counsel was ineffective for failing to raise these issues on direct appeal.  Reddick is not entitled to relief under his fifth ground.

Ground 6:  Instructional Error.

The trial court did not instruct the jury on the definition of actual and constructive possession (CALJIC No. 1.24).  Instead, and without objection, the trial court gave the following special instruction:

> The employees of a business are in constructive possession of the business owner's property during a robbery.  Robbery is an offense against the person. Thus, a store employee may be a victim of a robbery even though he is not its owner and not at the moment in immediate control of the stolen property.

Reddick contends that instruction given created an impermissible mandatory presumption that the employees of a business are in constructive possession of the property of their employer.  The California Court of Appeal rejected Reddick's arguments, holding:

> The issue is whether the challenged special instruction effectively removed the element of possession from the jury's consideration and lessened the prosecution's burden of proving every element of robbery with respect to Garcia

---

[67](...continued)
(ineffective assistance of trial counsel), not his fifth ground.  Consequently, it is assumed that Reddick is referring to his fourth ground, not this ground, which is his fifth.

[68] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

and Shabir, who did not have money stolen from their individual cash boxes. Defendant contends and the Attorney General concedes that the first sentence of the challenged instruction created a mandatory presumption, instructing the jury that if it found that Garcia and Shabir were employees of Wells Fargo Bank (basic fact), then it must find that Garcia and Shabir were in constructive possession of the bank's property during the robbery (elemental fact). We disagree, concluding that any defect in the challenged special instruction was cured by the jury instructions as a whole.

"[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is '"whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process."' [Citations.] '"[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."' [Citations]. If the charge as a whole is ambiguous, the question is whether there is a '"reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' [Citations.]" (*Middleton v. McNeil* (2004) 541 U.S. 433, 437 [158 L.Ed.2d 701, 707]; *People v. Welch* (1999) 20 Cal.4th 701, 766.)

""'"[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.'" [Citations.]' [Citation.]" (*People v. Smithey* (1999) 20 Cal.4th 936, 963-964.) Another instruction or the instructions as a whole may cure any defect in one instruction. (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)

In light of the jury instruction on the elements of robbery (CALJIC No. 9.40), in particular that portion on the element of possession, as well as the remaining portion of the special instruction itself, there is no reasonable likelihood that the jury would have understood that the element of possession had been established as a matter of law. The trial court instructed the jury on robbery (CALJIC No. 9.40), which included the following language in the definition of the crime, "[e]very person who takes personal property *in the possession of another,*" as well as the following as one of the elements the prosecution had the burden of proving, "[a] person had *possession of property* of some value, however slight." (Emphasis added.) In the special instruction, besides the challenged first sentence, the jury was instructed that "[r]obbery is an offense against the person. Thus, *a store employee may be* the victim of a robbery even though he/she *is not its owner and not at the moment in immediate control of the stolen property.*" (Emphasis added.) The definition of the crime instruction told the jurors that they had to determine the element of possession. Although the first sentence of the special instruction was phrased as an absolute, the sentence was expressly qualified by the subsequent sentence, which explained that such conclusion was permissive. The jury was told that Garcia and Shabir may be victims of robbery even though they did not own the bank's money and did not control the money at the time of the robbery. The defect, if any, in the challenged first sentence-that is,

21

that the employees of a business *are,* rather than *may be,* in constructive
possession of the business owner's property-was cured by the remaining portion
of the special instruction as well as the instruction on the elements of the crime
given to the jury. (Footnote omitted.)  Further, the jury was instructed to
"[c]onsider the instructions as a whole and each in light of all the others" and "not
to single out any particular sentence."  (CALJIC No. 1.01.)  There is no
reasonable likelihood that the jury understood the challenged first sentence in the
special instruction as defendant asserts.

Even assuming a defect and that the defect was not cured by the other
instructions, the error was harmless beyond a reasonable doubt.  "[I]nstructional
errors that have the effect of removing an element of a crime from the jury's
consideration . . . may be assessed in the context of the evidence presented and
other circumstances of the trial to determine whether the error was prejudicial."
(*People v. Flood* (1998) 18 Cal.4th 470, 489.)  "[A]n instructional error that
improperly describes or omits an element of an offense, or that raises an improper
presumption or directs a finding or a partial verdict upon a particular element,
generally is not a structural defect in the trial mechanism that defies harmless
error review," but "falls within the broad category of trial error subject to
*Chapman* [*v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]] review." (*Flood,
supra,* 18 Cal.4th at pp. 502-503.)

Garcia and Shabir were tellers.  As tellers, they had express authority to
handle the bank's money.  Their coworkers' tills/cash boxes held money
belonging to the bank, not to the individual tellers.  The overwhelming evidence
reflects that Garcia and Shabir had joint constructive possession of the money
belonging to the bank as against the robbers.  Any error was harmless beyond a
reasonable doubt.[69]

Clearly established Supreme Court case law provides that "the Due Process Clause

protects the accused against conviction except upon proof beyond a reasonable doubt of every

fact necessary to constitute the crime with which he is charged."[70]  As a consequence, a jury

instruction is constitutionally defective if it "ha[s] the effect of relieving the State of the burden

of proof enunciated in *Winship.*"[71]  Clearly established Supreme Court case law specifies the

standard for reviewing an ambiguous instruction:  "[W]e inquire 'whether there is a reasonable

---

[69] 2005 WL 1199206 at *3-4.

[70] *In re Winship,* 397 U.S. 358, 364 (1970).

[71] *Sandstrom v. Montana,* 442 U.S. 510, 521 (1979).

likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution."[72]   The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment.[73]  Because there is no evidence to the contrary, this Court must assume that the jury followed those instructions.[74]

The test stated in *Estelle* concerning ambiguous instructions was first articulated in deciding an Eighth Amendment challenge to a jury instruction in *Boyde v. California*.[75]  *Estelle* employed the test to decide a Due Process Clause challenge to a jury instruction outside the Eighth Amendment context.[76]  *Estelle* made a point of stating that its articulation and application of the test was established law.  The *Estelle* Court wrote, "[s]o that we may once again speak with one voice on this issue, we now disapprove the standard of *Cage* [*v. Louisiana,* 498 U.S. 39 (1990)] and *Yates* [*v. Evatt,* 500 U.S. 391 (1991)], and reaffirm the standard set out in *Boyde.*"[77] The Court in *Estelle* emphasized that, in determining whether there was a "reasonable likelihood" of misunderstanding, "the instruction 'may not be judged in artificial isolation,' but

---

[72] *Estelle,* 502 U.S. at 72 (citation omitted).

[73] *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

[74] *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis*, 471 U.S. at 324 n.9.

[75] 494 U.S. 370, 380 (1990).

[76] *Estelle,* 502 U.S. at 66-67.

[77] *Id.* at 73 n. 4; *see Middleton v. McNeil,* 541 U.S. 433, 437 (2004) (per curiam) (applying the established rule that "a jury instruction violates due process if . . . there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution") (internal quotation marks omitted); *Patterson v. Gomez,* 223 F.3d 959, 962 (9th Cir.2000) (same).

must be considered in the context of the instructions as a whole and the trial record."[78]   This

Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether

there is a reasonable likelihood that the jury applied the challenged instruction in a way that

violates the constitution and that the category of infractions that violate "fundamental fairness" is

very narrowly drawn.[79]   "Beyond the specific guarantees enumerated in the Bill of Rights, the

Due Process clause has limited operation."[80]

This Court cannot say that the decision of the California Court of Appeal was "contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States" or "was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."[81]   Nor can this Court find

that the state court unreasonably applied the correct legal principle within the scope of *Andrade-*

*Williams-Landrigan*; *i.e.*, the state court decision was more than incorrect or erroneous, its

application of clearly established law was objectively unreasonable.   Reddick is not entitled to

relief under his sixth ground.

## V.  CONCLUSION AND ORDER

Reddick is not entitled to relief under any ground raised in the Petition.

**IT IS HEREBY ORDERED THAT** the Petition for a Writ of Habeas Corpus under 28

U.S.C. § 2254 is **DENIED**.

---

[78] *Id.* at 72 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)).

[79] *Id.* at 72-73.

[80] *Id.*

[81] 28 U.S.C. § 2254(d).

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[82]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[83]

The Clerk of the Court is to enter final judgment accordingly.

Dated:  April 27, 2010.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[82] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).

[83] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.